IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

CORDELLRA MCCALEY                                                PLAINTIFF

v.                                                        No.  4:22CV72-MPM-DAS

SUPERINTENDENT MORRIS, ET AL.                                   DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Cordellra McCaley,

who challenges the conditions of his confinement under 42 U.S.C. § 1983 – which provides a federal

cause of action against "[e]very person" who under color of state authority causes the "deprivation of

any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42

U.S.C. § 1983.  For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff

was incarcerated when he filed this suit. [1]  The plaintiff alleges that the defendants failed to protect

him from attack by another inmate and, for two days, delayed his receiving medical attention after the

attack.  The sole remaining defendant, Laquitta Meeks, has moved [44] for summary judgment,

arguing that she enjoys qualified immunity from these allegations.  The plaintiff has responded to the

motion, and the matter is ripe for resolution.  For the reasons set forth below, the defendant's motion

will be granted, and the instant case will be dismissed under the doctrine of qualified immunity.

## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those

---

[1] *See* 42 U.S.C. § 1997e(a); *see also Williams v. Henagan,* 595 F.3d 610 (5th Cir. 2010) (PLRA
applies when inmate is incarcerated at the time he files suit, even if he was released during pendency
of suit).

made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).

After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th

Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

**Undisputed Material Facts**

Cordellra McCaley ("Plaintiff" or "McCaley") filed his Complaint on May 18, 2022, while an inmate in the custody of MDOC at the Mississippi State Penitentiary ("MSP"). *See generally* Doc. 1. McCaley claims that on October 4, 2021, Captain Laquitta Meeks ("Meeks") and Officer Busby ("Busby") were conducting shower call in MSP Building 29-G.[2] Doc. 1, p. 3. After McCaley finished his shower, Busby handcuffed him and removed him from Shower 1. *Id.* At the same time, another inmate, William Nelson ("Nelson"), opened his shower door (Shower 3), and, as he exited, attacked McCaley with a modified broomstick. *Id*.

McCaley alleges that Busby, rather than intervening in the fight, shoved him back into the shower, secured it, and then ran off the zone. *Id*. Captain Meeks also left the zone.[3] Someone in Unit 29-G Building put out a call for "all hands" to respond to the building to quell a disturbance. Doc. 44-1. Somehow, Nelson was able to get to McCaley (even though his shower was secured) and attack him with the broomstick. Doc. 1, p. 3. McCaley acknowledges that Busby and Meeks exited the zone when the attack began, stating that "*after the incident*" Busby and Meeks "entered the unit" with

---

[2] The sole defendant remaining in this suit is Captain Meeks. *See* Doc. 14 (dismissing all defendants except for Busby and Meeks) and Doc. 41 (dismissing Busby for failure to effect service of process).

[3] Captain Meeks states that she was not in Unit 29-G Building when the attack took place – but responded to the building when the "all hands" announcement went out. Doc. 44-1. However, construing the facts in the light most favorable to McCaley (the non-moving party), the court will assume, without deciding, that Meeks was in the building when the attack began.

maintenance workers Latron Grimes and James Grimes. Doc. 48-1, p. 2 (emphasis added). McCaley also alleges that, however, that while he was being attacked, Busby and Meeks looked on.[4] Doc. 1, p. 3. McCaley states in his response to the summary judgment motion that he showed and told Meeks and Busby that he needed medical attention – but he was not transported to medical until two days later, after he submitted a medical request form. *Id*. He claims that Busby failed to prevent the attack – and that both Busby and Meeks failed to stop the attack once it occurred. *Id*.

<h3 align="center">Qualified Immunity</h3>

Defendant Laquitta Meeks is shielded in this case by qualified immunity. "A qualified immunity defense alters the usual summary judgment burden of proof," as "the plaintiff has the burden to negate the defense once it is properly raised." *Kokesh v. Curlee*, 14 F.4th 382, 392 (5th Cir. 2021) (quotation omitted). "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome the qualified immunity defense, a plaintiff must meet a two-pronged test. He must first allege a violation of a clearly established constitutional right. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir. 2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 836-37 (5th Cir. 1998). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97

---

[4] This statement (that the defendants merely watched during the attack) seems to contradict McCaley's allegation that Busby and Meeks left the zone when the attack began. The court construes this to mean that Busby and Meeks watched as the attack began, left the zone for a time, then returned with additional staff for backup after the "all hands" announcement.

L.Ed.2d 523 (1987)).  In addition to alleging the violation of a clearly established constitutional right, a plaintiff must also allege facts showing that the defendant's conduct was objectively unreasonable in the light of the law established at the time of the incident.  *Heitschmidt*, 161 F.3d at 836-37.

The second prong of the qualified immunity test "is better understood as two separate inquiries":  (1) whether the allegedly violated constitutional right was "clearly established at the time of the incident"; and (2) if so, whether the defendant's conduct was "objectively unreasonable in the light of that then clearly established law."  *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305–06 (5th Cir. 2020); *see also Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005); *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 326 (5th Cir. 1998).  Even if the defendant's conduct "violate[d] a clearly established federal right," the defendant "is nonetheless entitled to qualified immunity if [his] conduct was objectively reasonable."  *Modica v. Taylor*, 465 F.3d 174, 179 (5th Cir. 2006).  *See also Elizondo v. Parks*, 254 F. App'x 329, 332 (5th Cir. 2007).

Indeed, "qualified immunity affords 'ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Kinney v. Weaver*, 367 F.3d 337, 384 (5th Cir. 2004) (Jones, J., concurring); *quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986) (holding that if officers of reasonable competence could disagree on the issue, the court must recognize immunity); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  A defendant's acts are deemed to be "objectively reasonable" unless *all* reasonable officials in the defendant's circumstances would have known that the conduct at issue violated clearly established law.  *Thompson v. Upshur Cnty., TX*, 245 F.3d 447, 456 (5th Cir. 2001).  "Pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances."  *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 578–579 (5th Cir. 2009) *citing Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997).

**No Violation of Clearly Established Federal Law**
**Regarding the Failure to Protect**

The plaintiff first claims that the defendants failed to protect him from attack by another

inmate. "The Eighth Amendment affords prisoners protection against injury at the hands of other

inmates." *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted). Deliberate

indifference "[is] the proper standard to apply in the context of convicted prisoners who claim[] denial

of medical care or the failure to protect." *Grabowski v. Jackson County Public Defenders Office*, 47

F.3d 1386, 1396 (5th Cir. 1995). A prisoner plaintiff cannot show that a prison official showed

deliberate indifference unless he can show that "the official [knew] of and disregard[ed] an excessive

risk to inmate health or safety;" indeed, the official must have been aware of facts giving rise to an

inference that a substantial risk of serious harm existed – and he must have drawn that inference.

*Farmer v. Brennan,* 511 U.S. 825, 837 (1994). An inmate pursuing a claim for failure to protect may

prove his claim by showing that the defendants knew of a specific threat to him but failed to take

measures to protect from it. *Id.* at 843.

**Meeks Was Not Required to Put Herself at Risk to Stop the Attack[5]**

Put simply, Meeks need not have intervened when the altercation began because doing so

would have risked serious injury to herself.[6] Ultimately, after leaving the scene for her safety, she

---

[5] The court has gleaned these facts from the plaintiff's complaint, Laquitta Meeks' statement attached as Exhibit "A" to her motion for summary judgment, and the plaintiff's response to the motion for summary judgment. The facts thus assembled consist of statements from each which are not contradictory. The court has noted the disputed facts in footnotes – but has relied solely on undisputed facts in its ruling (construing the facts in the light most favorable to the plaintiff).

[6] For her part, Meeks alleges that she was not present when the attack occurred – only arriving afterwards. *See* Exhibit "A." She states that she was on her way to Building 29-J when she heard an "all hands needed" alert, requesting assistance in Building 29-G (where the plaintiff was showering). *Id.* Meeks states that when she arrived at the scene, no inmates were fighting; nor did she observe McCaley being struck with a broomstick. *Id.*

returned with Busby and two MDOC employees, Latron Grimes and James Griffin, who then brought the situation under control by placing McCaley and Nelson in separate, secured, showers. *Id.*

McCaley alleges in his complaint that Meeks and Busby "were the two prison officials conducting shower call for 29-G Bldg the same day of the incident." Doc. 1 at 3. He alleges that *Busby*, not Meeks, was removing him, handcuffed, from the shower. *Id.* However, once Busby realized Offender Nelson's shower door was open, "[Busby] secured [McCaley's] shower door back [and] ran off the zone." *Id.* As such, Busby took immediate action to protect McCaley (locking him in the shower), then removed herself from the area of danger. *Id.*

The court will assume, for the purposes of this memorandum opinion and final judgment only, that Meeks was present during at least part of the attack. The plaintiff was locked in the shower for a time; as such, he cannot state what Busby and Meeks did – or what happened outside the shower – during that time. Offender Nelson then, somehow, unlocked McCaley's shower door and attacked him with a broomstick. *Id.* According to McCaley, Meeks and Busby *left the unit* after Busby had locked him in the shower in an effort to protect him from Nelson:

> Offender William Nelson … somehow open[ed] his shower door with a knife, *which made Defendants Laquitta Meeks and … Officer Busby leave* … the plaintiff handcuffed in the shower, while Offender … Nelson stabbed … [him] through the shower door with a broomstick [and] knife.
>
> …
>
> *After the incident*, maintenance workers, Latron Grimes and James Griffin, *entered the unit along with defendants, Laquitta Meeks and Officer Busby*, who later escorted offender William Nelson back to his cell.

Doc. 48-1, p. 2. (emphasis added).

Someone at the scene issued an "all hands needed" alert to break up the fight in Unit 29-G Building.[7]  At that point, Officers Latron Grimes and James Griffin (who were present in or near the zone to resolve a maintenance issue) broke up the disturbance – and separated the two inmates into two showers.  Doc. 44-1 at 1-2.  Captain Meeks and Busby then re-entered the zone and found the situation to be under control.  Doc. 1 at 3, Doc. 44-1 at 2.  According to McCaley, once he was out of the shower, he observed Meeks and Busby at the scene, and "all [they] did was stand there [and] look."[8]  Doc. 1 at 3.

At this point, Meeks "escorted Mr. McCaley back to his cell."  *Id.*  McCaley states in his response to Meek's summary judgment motion that, while being escorted, he informed her that he was attacked and injured – and requested that she take him to medical.[9]  Doc. 48-1, p. 3.  She did not, however, escort him to the medical zone.  Doc. 44-1, p. 2.  McCaley states that the two defendants "never reported the incident or allowed [him] to receive medical treatment until [he] reported the incident to Warden Simon [two] days later."[10, 11]  *Id.*  Hence, McCaley received medical treatment once he requested it.

**The Defendants' Actions During the Prison Fight Were Reasonable**

McCaley claims that the defendants failed to protect him from attack by another inmate.  Doc. 1.  "The Eighth Amendment affords prisoners protection against injury at the hands of other inmates."

---

[7] In her affidavit, Laquitta Meeks states that she was on her way to 29-J Building when the "all hands" alert went out – and that she immediately responded and headed for Building 29-G.  Doc. 44-1, p. 1.

[8] Meeks states that she did not witness the attack with the broomstick.  Doc. 44-1, p. 2.

[9] Meeks states in her affidavit, however, that McCaley did not appear injured and did not request transport to medical as she escorted him back to his cell.  Doc. 44-1, p. 1.

[10] McCaley has not alleged facts to show how Meeks or Busby prevented him from seeking and receiving medical care once he reached his cell after the attack.

[11] McCaley alleges that Meeks' failure to file a report on the incident constitutes a violation of his rights, but he has offered no authority to support this contention, and the court knows of none.

*Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted). Deliberate indifference "[is] the proper standard to apply in the context of convicted prisoners who claim[] denial of medical care or the failure to protect." *Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1396 (5th Cir. 1995). A prisoner plaintiff can prevail on a claim of failure to protect only if he can show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety;" indeed, the official must have been aware of facts giving rise to an inference that a substantial risk of serious harm existed – and he must have drawn that inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994) (discussing the deliberate indifference standard). An inmate pursuing a claim for failure to protect may prove his claim by showing that the defendants knew of a specific threat to him but failed to take measures to protect from it. *Id.* at 843. "[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

In this case, McCaley does not allege any facts to show that either Officer Busby or Captain Meeks was aware that inmate Nelson might attack him; as such, neither defendant could have inferred that McCaley faced a substantial risk of serious harm by escorting the two inmates to shower call at the same time. Instead, the plaintiff alleges that Busby and Meeks violated the Constitution *when they did not take more immediate action to stop the attack after it began*. The Fifth Circuit has addressed such a claim on summary judgment review, and, as discussed below, prison guards are not required to put themselves in harm's way by immediately trying to break up a fight among inmates.

Though a prison guard is not required to immediately intervene in an altercation between inmates, she must take *some* steps to halt inmate-on-inmate violence. A prison official is not deliberately indifferent if she has taken some steps to halt the violence, such as: (1) giving verbal

orders to stop the violence, *Payne v. Collins*, 986 F. Supp. 1036, 1061 n. 59 (E.D. Tex. 1997); (2) leaving the scene to summon help, *Rios v. Scott*, 100 F. App'x 270 (5th Cir. 2004) (an officer did not immediately intervene in an attack when it commenced; instead, he ran to get assistance); and (3) leaving to obtain tools, such as weapons and teargas, to halt the violence, *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006) ("No rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence.")

In *Rios*, *supra*, a corrections officer was escorting an inmate to his cell when another inmate burst out from a cell and stabbed the escorted prisoner with a weapon. The corrections officer was not adequately armed to confront the armed and aggressive inmate – and chose, instead, to exit the zone to summon help. The injured inmate died from the stab wounds. The Fifth Circuit affirmed summary judgment in favor of the defendant, holding that the corrections officer was entitled to qualified immunity "because there is no clearly established constitutional right for an officer to immediately intervene when an armed inmate attacks another inmate, as the officer may need to call for backup or seek to avoid her own serious injury." *Rios*, 100 F. App'x at 272.

In the present case, Meeks enjoys qualified immunity regarding her decision not to immediately confront the armed and violent inmate, as other MDOC staff took action to protect McCaley and quell the disturbance. First, Busby returned McCaley to the locked shower in an attempt to shield him from his attacker. Doc. 1, p. 3. In addition, someone on scene put out an "all hands needed" call to summon assistance. *See* Exhibit "A." Meeks returned to the unit once she heard the "all hands needed" announcement. *Id*. Further, two MDOC employees at or near the scene appear to have intervened and stopped the fight. *See* Exhibit "A."

McCaley argues throughout his complaint and subsequent filings that Meeks should have immediately rushed to his aid when Nelson attacked him – putting herself at risk of attack. Instead,

Meeks waited for backup; in the meantime, Busby tried to protect McCaley (by locking him away), and someone else summoned assistance (the "all hands" announcement). These actions are on par with giving verbal orders (*Payne*, *supra*); leaving the scene to summon help (*Rios*, *supra*); and leaving to obtain tools to restore order (*Longoria*, *supra*). Hence, under *Rios*, even if Meeks had been on-scene when the attack began, she was not required to risk injury by immediately entering the fray. Others took steps to protect McCaley, which, under *Rios*, *Payne*, and *Longoria*, is sufficient to overcome a prisoner plaintiff's failure-to-protect claim. For these reasons, qualified immunity shields Meeks from liability.

## Denial of Medical Treatment

The plaintiff also alleges that Meeks violated his Eighth Amendment rights by failing to take him immediately to medical instead of escorting him back to his cell. In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).[12]

In cases such as this, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th

---

[12] The court addressed the deliberate indifference standard in detail during the discussion above regarding McCaley's failure-to-protect claim.

Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S. D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir. 2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

"Deliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment. *Id.*; *Miller v. Wayback House*, 253 F. App'x 399, 401 (5th Cir. 2007). To meet his burden in establishing deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498.

Under the facts of this case, McCaley has not met the deliberate indifference standard as to the alleged delay in his receiving medical care. As an initial matter, to prevail on a claim for delay in adequate medical care, McCaley must provide expert medical testimony on the issue, and he has not done so. *See Campbell v. McMillin*, 83 F. Supp. 2d 761 (S.D. Miss. 2000) ("In all but the simple and routine cases ... it is necessary to establish medical causation by expert testimony.") McCaley also states that he received medical care when he requested it two or three days later.[13] Doc. 1, p. 3. In addition, he has not described any injury from the attack – or any additional harm arising out of the two-day delay examination and treatment. *Id*. Neither has he alleged facts to show that Meeks or

---

[13] McCaley alleges a two-day delay in one part of his complaint, but a three-days delay in another. Doc. 1, p. 3 (3 days), p. 10 (2 days). The difference does not alter the outcome of the case.

Busby somehow prevented him from seeking and receiving medical care during the two days following the attack. In short, McCaley has not alleged facts to show that he suffered serious injury from the attack or the delay in treatment; nor has he alleged facts to show how Meeks prevented him from seeking and receiving medical treatment. In the absence of such allegations, McCaley cannot show that Meeks possessed the subjective recklessness necessary to support his claim of deliberate indifference.

### Meeks' Actions Were Objectively Reasonable

Assuming, *arguendo*, that Meeks' actions violated a clearly established constitutional right, her actions were nonetheless objectively reasonable in light of "law which was clearly established at the time of the disputed action." *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004) (citations omitted). Whether an official's conduct was objectively reasonable is an issue of law for the court, not a matter of fact for the jury. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). The unlawfulness of the defendant's actions must have been readily apparent from sufficiently similar situations, but the defendant's exact acts need not have been illegal. *Id*. at 236–37. An official's actions must be viewed in light of the circumstances confronting him, without the crystal clarity of hindsight. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). Ultimately, the plaintiff must allege facts sufficient to show that no reasonable officer could have believed his actions were proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994); *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Ultimately, "qualified immunity affords 'ample protection to all but the plainly incompetent or those who knowingly violate the law." *See Kinney, supra*.

In this case, as discussed above, Meeks' actions were objectively reasonable. Others had

responded to the altercation – attempting to protect the plaintiff and to summon further assistance. Assuming Meeks was present when the attack began, her decision to retreat and wait for backup before entering the fray to disarm and subdue a hostile inmate was reasonable.

Meeks then escorted the plaintiff back to his cell, rather than take him directly to medical, as he requested. McCaley received medical care when he requested it two days later. He has not alleged that he was seriously injured – or that the delay in treatment caused additional serious injury. As such, these allegations do not state a valid claim for denial of adequate medical care.

As the defendants took immediate measures to protect the plaintiff (though some of the measures proved ineffective), and the plaintiff received medical care when he requested it two days later – Meeks' actions were objectively reasonable. As such, she is cloaked with qualified immunity, and the plaintiff's allegations against her (failure to protect and delay in medical care) will be dismissed with prejudice.

### Conclusion

For the reasons set forth above, the motion [44] by the defendant for summary judgment will be granted, and judgment will be entered in favor of the defendant under the doctrine of qualified immunity. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 14th day of July, 2025.

/s/Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI